```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/10/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                              :
HERALDO MORA,
                                              :
                  Petitioner,            08 Civ. 11224 (WHP) (KNF)
                                              :
      -against-                MEMORANDUM & ORDER
                                              :
WILLIAM BROWN,
                                              :
                  Respondent.
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

        Petitioner pro se Heraldo Mora ("Mora") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for attempted second-degree murder and first-degree criminal use of a firearm, following a jury trial in New York State Supreme Court. On September 7, 2010, Magistrate Judge Fox issued a report and recommendation (the "Report") recommending that this Court deny Mora's petition. On October 26, 2010, Mora filed objections to the Report. For the following reasons, this Court concludes that Mora's objections are without merit and adopts Magistrate Judge Fox's thorough and well-reasoned Report in full.

## BACKGROUND

        On August 22, 1996, police responded to reports of gunshots near West 174th Street, between Broadway and Fort Washington Avenue, in Manhattan. (Report at 1.) Soon thereafter, Elvis Ramirez ("Ramirez") arrived at Columbia Presbyterian Hospital with a gunshot wound. (Report at 1.) Several days later, Ramirez told Detective Robert Fox that he went to 174th Street to speak to Mora and his brother, William Mora ("William"), and that after a heated

exchange, Mora shot him. (Trial Transcript ("Tr.") at 599-600.) Ramirez was an acquaintance of both brothers, and had known Mora for sixteen years. (Tr. at 394.)

On August 23, 1996, while conducting undercover surveillance of a motel in Queens County, Detective Joseph Murphy ("Murphy") observed William and another individual arrive in a vehicle. (Report at 6.) William entered a motel room briefly and reemerged with Mora, who was carrying a white plastic shopping bag. (Report at 6.) Mora placed the bag in the trunk and then drove off in the vehicle with William and the third individual. (Tr. at 659-60.) Murphy followed the vehicle to a gas station. (Tr. at 660.) From there, Mora walked down the block with the white plastic bag and placed it in a dumpster at a construction site. (Report at 6.) Murphy retrieved the bag, found it contained a nine millimeter handgun and ammunition, and arrested Mora, William, and the other individual. (Report at 6.)

Mora was indicted in New York County on one count each of attempted second-degree murder, second-degree assault, second-degree criminal possession of a weapon, and first-degree criminal use of a firearm, all based on the shooting of Ramirez. (Report at 2.) In addition, Mora, William, and the third individual were each indicted in Queens County on, inter alia, two counts of criminal possession of a weapon arising out of the Queens arrest. (Report at 9.) Mora was represented by Barry Weinstein ("Weinstein") in the New York County case and by another attorney in the Queens County matter. (Report at 9.) Weinstein also represented Mora's brother, William, on the possession charges in Queens County. (Report at 9.)

At Mora's trial in New York County, Ramirez testified that he drove to 174th Street to ask William for money, but William refused to give him any. (Report at 5.) He testified that Mora then told him "not to come by again," and that he "didn't want to see [him], that they were sick of seeing [him]." (Report at 5.) Ramirez responded by insulting Mora's

2

mother. (Report at 5.) Ramirez then closed his car window, heard shots, and saw Mora firing at him. (Report at 5.) According to Ramirez, William was standing on the side of the vehicle opposite from where the shots were fired. (Tr. at 413.) No further testimony was elicited regarding William's location or his role in the shooting.

Murphy testified that when Mora was fingerprinted, he found that Mora had chewed off several of his fingertips. (Report at 7.) On cross examination, Murphy equivocated by saying that he "believe[d] it to be [Mora]" who had attempted to mutilate his fingertips, but that he would check with Central Booking that day. (Report at 7.) Recalled later that day, Murphy testified as follows:

> Weinstein: [T]his morning you said you believed it was my client [who] had started biting off his fingers, the fingertips, correct?
> Murphy: Yes, sir.
> Weinstein: And pursuant to my request did you check with Central Booking to see if it was my client or his brother William who had bit his fingers?
> Murphy: Yes, I went to BCI and got the actual fingerprint cards.
> Weinstein: And who was it? Was it my client or his brother who was biting his fingers?
> Murphy: No, it was William Mora who was biting his fingers.
> Weinstein: So you were mistaken when you said you believed it was [Mora] this morning?
> Murphy: Yes sir, that's correct.
> Weinstein: No other questions.

(Tr. at 762-63.)

At trial in the New York proceedings, the prosecution argued that Mora used the gun found in connection with the Queens County arrest to shoot Ramirez. (See Tr. at 815.) In his summation, Weinstein argued that the prosecution could not "prove this case beyond a reasonable doubt that my client, not somebody else, [Heraldo] Mora is the person that fired the

3

shot that went into [Ramirez's] back." (Report at 7 (emphasis added)) Weinstein did not argue that it might have been William, not Mora, who fired at Ramirez. Moreover, Weinstein did not mention Murphy's confusion about whether William or Mora chewed off his fingertips.

Mora was convicted of attempted second-degree murder and first-degree criminal use of a firearm, and sentenced to twenty years in prison. (Report at 8.) He appealed on the grounds that (1) Weinstein provided ineffective assistance because his simultaneous representation of William on the weapons possession charge in Queens County created an actual conflict of interest, (2) the trial court erred in permitting evidence of Mora's uncharged crimes to be admitted at trial, and (3) the trial court erred in denying Mora's request for a Mapp hearing.[1] (Report at 8.) Mora's conviction was affirmed, see People v. Mora, 737 N.Y.S.2d 71 (N.Y. App. Div. 2002), and his subsequent application for leave to appeal to the Court of Appeals was denied, see People v. Mora, 98 N.Y.2d 639 (2002). The Appellate Division noted that Mora's claim was "based on factual allegations dehors the record that would require a CPL 440.10 motion." Mora, 737 N.Y.S.2d at 72.

Thereafter, Mora moved to vacate his conviction pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, which provides for relief where "[i]mproper and prejudicial conduct not appearing in the record occurred during a trial resulting in the judgment which conduct, if it had appeared in the record, would have required a reversal of the judgment upon an appeal therefrom." C.P.L. § 440.10(f). The New York County Supreme Court denied Mora's application, and the Appellate Division affirmed, finding that Mora "did not show that the conduct of his defense was in fact affected by the operation of the conflict of interest, or that the conflict operated on the representation," and that "[t]he actions of counsel challenged by [Mora]

---

[1] Mora does not object to the Magistrate Judge's conclusions on the latter two arguments.

4

on appeal constituted reasonable strategic decisions that did not prejudice defendant or deprive him of a fair trial." People v. Mora, 843 N.Y.S.2d 311, 312 (N.Y. App. Div. 2007).

On December 24, 2008, Mora filed his petition for habeas corpus, raising the same three arguments he asserted in the Appellate Division in 2002. On September 7, 2010, Magistrate Judge Fox issued a Report, recommending that Mora's petition be denied. Mora objects only to Magistrate Judge Fox's findings on his ineffective assistance of counsel claim.

## DISCUSSION

### I. Standard of Review

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1). This Court reviews de novo those parts of the Report to which objections are made and reviews the remainder for clear error on the face of the record. 28 U.S.C. § 636(b)(1); Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, "[a] petition for habeas corpus cannot be granted unless the state court's ruling 'resulted in a decision that was contrary to, or involved an unreasonable interpretation of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Eisemann v. Herbert, 401 F.3d 102, 110 (2d Cir. 2005) (quoting 28 U.S.C § 2254).

### II. Ineffective Assistance of Counsel

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." United States v. Blau, 159 F.3d 68, 74 (2d

5

Cir. 1998); see also Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). Although, ordinarily, a defendant claiming ineffective assistance of counsel must demonstrate that his counsel's deficiency was prejudicial, "prejudice is presumed . . . if the defendant demonstrates that counsel actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." Strickland v. Washington, 466 U.S. 668, 692 (1984) (citing Cuyler, 446 U.S. at 350) (internal quotations omitted); see also Eisemann, 401 F.3d at 107. In other words, a defendant must identify an "actual lapse in representation." Cuyler, 446 U.S. at 349.

The Second Circuit has elaborated that to prove an "actual lapse in representation," "a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." United States v. Mappiedi, 62 F.3d 465, 469 (2d Cir. 1995) (internal quotations omitted). Moreover:

> This is not a test that requires a defendant to show that the alternative strategy or tactic not adopted by a conflicted counsel was reasonable, that the lapse in representation affected the outcome of the trial, or even that, but for the conflict, counsel's conduct of the trial would have been different. Rather, it is enough to show that a conflict existed that 'was inherently in conflict with' a plausible line of defense or attack on the prosecution's case.

Mappiedi, 62 F.3d at 469 (quoting United States v. Levy, 25 F.3d 146, 157 (2d Cir. 1994)).

Other circuits "have taken a slightly more demanding approach, requiring suggestion of a defense that was objectively reasonable." Eisemann, 401 F.3d at 107. For instance, the Fourth, Eighth, and Eleventh Circuits require a defendant to (1) "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued," (2) "show that the alternative strategy or tactic was objectively reasonable under the facts of the

6

case," and (3) "establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001); accord Covery v. United States, 377 F.3d 903, 908 (8th Cir. 2004) (same); Quince v. Crosby, 360 F.3d 1259, 1264-65 (11th Cir. 2004) (same); see generally Eisemann, 401 F.3d at 107-08.

In his objections, Mora suggests two alternative defense strategies that he argues establish the requisite conflict: (1) Weinstein should have argued in his summation that William might have been the shooter, and (2) after Murphy admitted on cross examination to confusing William and Mora during fingerprinting, Weinstein should have questioned the reliability of Murphy's observations and identifications of Mora during his surveillance on August 23, 1996.

Under Second Circuit precedent, Mora has raised a "plausible alternative defense strategy" that was "inherently in conflict" with Weinstein's simultaneous representation of William on a related crime. Mappiedi, 62 F.3d at 469. The evidence at trial established a plausible basis to argue that William was the real shooter: Ramirez traveled to 174th Street to speak to William about a matter involving money; William was in the vicinity at the time of the shooting; and, assuming William knew that the white plastic bag placed in the vehicle's trunk contained a gun, he was at one point in constructive possession of the gun that prosecutors argued was used to shoot Ramirez. As such, that argument would be sufficient to warrant reversal under Second Circuit precedent, had Mora been convicted in federal court. Under AEDPA, however, "[a] petition for habeas corpus cannot be granted unless the state court's ruling 'resulted in a decision that was contrary to, or involved an unreasonable interpretation of, clearly established Federal law, as determined by the Supreme Court of the United States." Eisemann, 401 F.3d at 110 (quoting 28 U.S.C § 2254) (emphasis added).

The New York Appellate Division rejected Mora's ineffective assistance of counsel claim on the following grounds:

> Although defendant demonstrated the existence of a potential conflict of interest, he did not show that the conduct of his defense was in fact affected by the operation of the conflict of interest, or that the conflict <u>operated on the representation</u>. . . . The actions of counsel challenged by defendant on appeal constituted <u>reasonable strategic decisions</u> that did not prejudice defendant or deprive him of a fair trial. Defendant claims that his trial counsel should have specifically argued to the jury that defendant's brother was the actual assailant. However, counsel's affirmation . . . established that he had <u>legitimate strategic concerns</u>, grounded in the evidence, for not expressly making that argument, and that counsel was not seeking to shield another client.

<u>Mora</u>, 843 N.Y.S.2d at 213 (emphasis added). The Appellate Division's reasoning closely tracks the more stringent Fourth Circuit test. Thus, "[i]n the absence of a definitive ruling by the Supreme Court as to whether ineffective assistance claims based on a conflict of interest are to be assessed under the 'plausible' strategy standard of this Circuit or the 'objectively reasonable' standard of other Circuits, it was not unreasonable for the state court to assess and reject [petitioner's] claim under what appears to have been the slightly more rigorous standard." <u>Eisemann</u>, 401 F.3d at 110-11.

Moreover, this Court cannot say as a matter of law on the record before it that the alternative strategies suggested by Mora were objectively reasonable, or that Weinstein's failure to pursue them was "linked" to the actual conflict, such that the conflict violates the more demanding test adopted by the Fourth Circuit. Notably, Ramirez, the only witness to testify with first-hand knowledge of the shooting, stated not only that Mora was the shooter, but that at the time of the shooting, William was situated in the opposite direction from where the shots were fired. No other witness testified as to William's location at the time of the shooting. In addition, Weinstein affirmed that during his representation of Mora, he found no evidence that William

was the shooter.  See People v. Mora, No. 8615/96, slip op. at 3 (N.Y. Sup. Ct. Mar. 10, 2003). Moreover, to the extent that Mora contends that Ramirez might have confused the two brothers in identifying Mora as the shooter, the reasonableness of that argument is undermined by the fact that Ramirez had known Mora for sixteen years.  Accordingly, although the alternative defense that William was the shooter may have been plausible, this Court cannot say that it was objectively reasonable, let alone that Weinstein's decision not to pursue it was based on the conflict created by his representation of both brothers.

For similar reasons, the alternative strategy Mora proffers regarding Murphy's misidentification is also unavailing.  Although a more extensive cross-examination might have been effective in impeaching Murphy on the events leading to Mora's arrest in Queens County, it would have had no effect on Ramirez's first-hand identification of Mora as the shooter and would not have changed the fact that Mora was at the very least in constructive possession of the gun used to shoot Ramirez.  Moreover, even if further cross-examination of Murphy would have been objectively reasonable, this Court cannot say that Weinstein's reasons for declining to do so were "linked" to the actual conflict.  On the contrary, by challenging Murphy's recollection of which brother mutilated his fingertips, Weinstein demonstrated his willingness to adduce evidence that would be detrimental to William.

Accordingly, Mora's objection to the Report based on ineffective assistance of counsel is without merit.  This Court has reviewed the remainder of the Report, finds it is not facially erroneous, and affirms and adopts it.

## CONCLUSION

For the foregoing reasons, this Court adopts the report and recommendation of Magistrate Judge Kevin N. Fox in its entirety. Mora's petition for a writ of habeas corpus is denied. Because Mora has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. 28 U.S.C. § 2253(c). In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to terminate all motions pending as of this date and mark the case closed.

Dated: December 10, 2010
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copies mailed to*:
The Hon. Kevin N. Fox
United States Magistrate Judge

Heraldo Mora
DIN# 97-A- 5089
Arthur Kill Correctional Facility
2911 Arthur Kill Road
Staten Island, NY 10309
*Petitioner Pro Se*

*Counsel of Record*:
Lisa Fleischmann, Esq.
Assistant Attorney General of the
  State of New York
120 Broadway
New York, NY 10271
*Counsel for Respondent*

10